1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

12
13
14
15
16
17
18

STEPHEN KNIGHT LEWIS,

        Plaintiff,

    v.

CITY OF LAKEWOOD *et* al.,

        Defendants.

CASE NO.  C08-5589FDB/JRC

REPORT AND
RECOMMENDATION

Noted for September 25, 2009

19
20
21
22
23
24
25
26

    This 42 U.S.C. §1983 Civil Rights matter has been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrate Judge's

Rules MJR 1, MJR 3, and MJR 4.  Before the court is Defendant's Motion for Summary

Judgment (Dkt. # 32).  Plaintiff has responded (Dkt. # 41).  Defendants have replied (Dkt. # 42.

Having read the pleadings and considered the entire file the Court recommends that Defendant's

Motion for Summary Judgment be GRANTED IN PART.

    Mr. Lewis brings this action alleging that Defendants used excessive force when arresting

him on February 10, 2007.   He also challenges a blood draw performed to determine the amount

of alcohol that was in his blood after his arrest. Plaintiff claims the blood draw was in violation of his Fourth Amendment rights.

## FACTS

The following facts are undisputed and are taken from the Motion for Summary Judgment (Dkt. # 32). On February 10, 2007, Lakewood Police Officer David Butts observed a car speeding southbound on Bridgeport Way. Officer Butts was in a fully marked Lakewood City police car traveling northbound. Radar confirmed that the car he observed was traveling 50 miles per hour in a 35 mile per hour speed zone. Officer Butts turned around and activated his emergency lights. The driver of the suspect's car initially appeared to pull into the Hollywood Video parking lot and then pulled back onto Mt. Tacoma Drive. The driver of the car, Plaintiff Stephen Lewis, was attempting to elude Officer Butts. Plaintiff made a series of turns, and ran a red light. At one point, plaintiff was traveling 50 miles per hour in a 25 mile per hour speed zone. Plaintiff was also driving down the middle of a narrow road.

Plaintiff pulled onto a dead end road and at the end of the road, he got out of his car and ran. Officer Butts continued the pursuit on foot. Plaintiff fell off a retaining wall at the side of the home located at 9709 Seeley Lake Drive. There was a GMC "JIMMY" SUV parked on the other side of the retaining wall. Plaintiff struck his head on the side mirror of the vehicle, breaking the mirror off the SUV. Plaintiff fell to the pavement. Officer Butts initially remained on top of the retaining wall and ordered plaintiff to lie on the ground with his hands behind his back.

Plaintiff failed to comply with the officer's command and attempted to get up. Officer Butts deployed his Taser. The prongs from the Taser struck plaintiff in the lower back and left shoulder and discharged a five-second electrical burst. According to the Taser log, between

21:38:48 and 21:39:41 Officer Butts reactivated his Taser five additional times. Thus, there were six five-second bursts of electricity. In his report, Officer Butts indicates that the Taser was activated seven times.

Defendants and Plaintiff provide different explanations regarding the reason for the additional Taser bursts. Plaintiff states in his response that he complied with the officer's orders after the first Taser burst. (Dkt. # 41, page 3). Yet he also claims that the blow to his head from striking the SUV "impaired, dazed, and indicate [sic] his inability to comply with the officer's commands." (Dkt. # 41, page 4).

Officer Butts swears in his affidavit that the reactivation of the Taser was because Plaintiff kept trying to get up or kept reaching to pull the Taser prongs out of his back and shoulder.

In his affidavit, Officer Butts explains his reasons for deploying the Taser and why he chose to continue activating the Taser rather than trying another method to gain Plaintiff's compliance. He states:

> Because I was alone and plaintiff was actively (physically) resisting and
> ignoring my verbal commands by attempting to stand and flee, I believed
> the Taser was the most effective way to maintain physical control over the
> plaintiff without escalating the situation by going "hands-on" with him or
> using other types of force. The other force options available to me at that
> time included using pepper spray or physical body force (punches and
> kicks). At that time, I did not believe pepper spray would have been
> effective, as plaintiff had already demonstrated that he was willing to try
> to flee at all costs and pepper spray does not inhibit the ability to stand and
> run. Also pepper spray requires the officer to get closer to the suspect in
> order to apply it. If plaintiff continued to resist arrest and I had to
> physically wrestle with him, the pepper spray could have physically
> affected me through contact with plaintiff. I did not believe going hands-
> on with plaintiff was a reasonable option, as plaintiff was physically
> extremely large and muscular. Also, it was very dark in the location of the
> arrest and I had not yet searched plaintiff for weapons. If I had moved in
> to handcuff him without his compliance and he was armed, it would have
> been very easy for him to use a weapon, like a knife on me. Additionally,

by going hands-on, I would be bringing my entire duty belt of weapons to within plaintiff's [sic] reach. If plaintiff got the upper hand, he would have been able to access my gun, Taser, asp baton (collapsible metal night stick), flashlight and pepper spray. Going hands-on without back-up officers on scene could have escalated the situation and resulted in grave injury to plaintiff and/or me. Taking all of those factors into account, I opted to use my Taser. The Taser allowed me to counteract plaintiff's physical resistance without inflicting any injury to plaintiff. While a person experiences temporary muscle disruption and discomfort while the Taser is cycling, the Taser does not inflict any long-term or lasting injury. The pain ends as soon as the five-second cycle ends. Additionally, the Taser allowed me to counteract plaintiff's resistance from a safe distance. Considering all of these factors, I opted to use the Taser and it worked. Once Officer Martin arrived on-scene and plaintiff complied, I ceased using the Taser and we were able to take plaintiff safely into custody.

(Dkt. # 34, affidavit of Officer Butts ¶ 9).

While taking Plaintiff into custody the officers detected an odor of intoxicants. Officer McClelland, who has special training in handling charges of "Driving-Under-the-Influence", was called to the scene.

Defendants maintain that Plaintiff was initially combative with medical personnel, but, at some point, he closed his eyes and became unresponsive. The defendants' contentions are partially corroborated by the deposition of the medical personnel who treated Plaintiff (Dkt. # 34, Exhibit A, deposition of David Marston). Mr. Marston states Plaintiff kept his eyes closed and was rigid, making it more difficult to place a "C" collar on him and place him on a backboard (Dkt. # 34, Exhibit A, deposition pages 13 and 14). Mr. Marston also states that after he was placed in the ambulance, Plaintiff pretended to become unresponsive. Mr. Marston concluded that Plaintiff was faking because Plaintiff was crying, and when they attempted to check his pupils he kept his eyes shut. An unconscious person does not cry and could not keep their eyes shut. Further, Plaintiff kept his body stiff , which an unconscious person would not do. Plaintiff allegedly interfered with their ability to obtain a blood pressure reading by stiffening his arm.

Officer McClelland advised Plaintiff of his right to refuse a blood draw and the consequences of exercising that right. Officer McClelland received no response and Plaintiff continued to act as if he were unconscious. Officer McClelland directed the medical personnel to draw blood. Medical personnel made it clear they would have drawn blood anyway for routine medical testing. Plaintiff's blood alcohol level was over the legal limit allowed by the State of Washington.

Further, Plaintiff was driving while his license was suspended or revoked. Plaintiff was arrested for driving under the influence, (DUI), resisting arrest, driving while license suspended, and felony eluding. He later pled guilty to felony eluding and DUI (Dkt. # 33 and 34 Exhibits). The plea agreement is to an amended complaint in which and the government dropped the charges of resisting arrest and driving while license suspended. (Dkt. # 3, Exhibits).

Plaintiff is unrepresented. In his "Motion Opposing Defendants' Motion for Summary Judgment", (DKT # 41), Plaintiff makes clear for the first time that he is attempting to challenge the legality of his DUI conviction in this civil rights action. (Dkt. # 41, pages 27 to 29).

Although Plaintiff 's "Motion Opposing Defendants' Motion for Summary Judgment" contains a number of factual assertions regarding what occurred at the time of arrest, the "Motion" is not supported by sworn testimony, affidavits, or deposition testimony that sets forth the alleged facts contained in the "Motion." In short, Plaintiff has failed to present admissible evidence to contradict defendants' evidence.

<u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradict facts specifically attested by the moving party. Id. Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

DISCUSSION

In the reply, Defendants ask the Court to strike the response because it was not mailed until July 20, 2009. This was three days late. The court declines to strike the brief as both the brief and a reply are before the Court. Defendants also note the brief is four pages over length.

The Court agrees that the response is four pages over length, but, the document is hand written and plaintiff is pro se. The pleading will be considered.

Defendants also argue several of Plaintiff's contentions must be stricken because they are unsupported by admissible evidence. These contentions are:

1.     Plaintiff complied with Officer Butts' commands after the first Taser cycle. (Dkt.#41, p. 3, ¶ 2; p. 6, ¶ 2.)
2.     Plaintiff responded verbally to Lakewood Fire personnel. (Id., p. 6, ¶ 3.)
3.     The paramedics tried to check plaintiff's pupils, but plaintiff would not let them. (Id., p. 7, ¶ 1.) The paramedics knew that plaintiff was conscious and was not responding on purpose. (Id.)
4.     Plaintiff suffers emotional distress, mental anguish, fear of needles, loss of Freedom, medical bills, disfigurement of the back, and loss of sacred body fluid. (Dkt. #41, p. 9,¶ 2.)
5.     Plaintiff "would not have been able to resist or evade by flight" due to the sequence of Taser cycles. (Dkt. #41, p. 15, ¶ 1.).

(Dkt. # 42). The contentions will not be stricken. Contemporaneous with this Report, the Court has requested that plaintiff submit additional materials to provide admissible evidence to support the contentions contained in his "Motion," which, if substantiated, may create an issue of fact on some of the matters that are the subject of defendants' motion for summary judgment. This court is interested in reaching the merits of this dispute and will not stand on procedure to dismiss a claim that may be the proper subject of a trial. At the same time, this court must have admissible evidence before determining what facts are truly at issue, if any. At the same time, defendants have raised certain issues that Plaintiff has not substantively disputed and appear ripe for adjudication. The following analyzes those issues.

A.     The blood draw; defendants McClelland and Lakewood City (including the Lakewood Police Department).

Plaintiff attempts to impugn his DUI conviction by challenging the evidence that he had too high an alcohol level in his blood. The evidence was obtained by blood draw after the officer

sought Plaintiff's consent. Plaintiff refused to respond by pretending to be unconscious. Plaintiff claims this violated his Fourth Amendment right to privacy. Thus, he is collaterally challenging the evidence that supports his DUI conviction and a finding in his favor calls the validity of that conviction into question. This, the Court cannot do.

When a person is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is his immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973). In June 1994, the United States Supreme Court held that "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994). The court added:

> Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. . . . [A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

<u>Id</u>. at 489. "[T]he determination whether a challenge is properly brought under § 1983 must be made based upon whether 'the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment.' <u>Id</u>. If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under § 1983." <u>Butterfield v. Bail</u>, 120 F.3d 1023, 1024 (9th Cir.1997) (<i>quoting</i> <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997)).

This is a § 1983 civil rights claim -- not a habeas corpus petition. Plaintiff's claims necessarily call into question the legality of his DUI conviction. Plaintiff's claims should be first raised in a petition for writ of habeas corpus, not a § 1983 civil rights claim for money damages. Significantly, Plaintiff has not successfully challenged the admissibility of

the blood draw or successfully overturned his DUI conviction, and therefore, a § 1983 action based on that blood draw will not be considered.

Since the only claim brought by Plaintiff against Defendants McClelland and the City of Lakewood is based on this allegedly improper blood draw, these two Defendants are entitled to Summary Judgment and DISMISSAL WITHOUT PREJUDICE.[1]

B.    Use of the Taser, the arrest of plaintiff: Defendant Butts.

Contemporaneously with the filing of this Report and Recommendation, this Court has ordered additional briefing on the motion for summary judgment on the claim regarding the use of the Taser and the conduct of Defendant Butts.

While defendants have supported their version of the events with significant and detailed affidavits, Plaintiff has not. Plaintiff, however, has included a number of factual assertions in his "Motion Opposing Defendants' Motion for Summary Judgment" (Dkt #41), that, if supported by admissible evidence, may give rise to a factual issue justifying denial of summary judgment. While this court is not permitted to deny the motion for summary judgment without admissible evidence to support Plaintiff's claim, this court should also give unrepresented parties every opportunity to present whatever evidence there may be to support their position before ruling on a summary judgment motion. Therefore, this court has re-noted this portion of defendants' motion for summary judgment to October 9, 2009.

CONCLUSION

For the reasons stated in this Report and Recommendation the Court recommends that the Motion for Summary Judgment be GRANTED IN PART. The claims against Defendants

---

[1] This court recommends dismissal WITHOUT PREJUDICE because it is conceivable that plaintiff may seek and obtain a writ of habeas corpus in the future regarding this blood draw, in which event, he may be entitled to review this claim.

1 McClelland and City of Lakewood (including the Lakewood Police Department) should be

2 DISMISSED WITHOUT PREJUDICE. The remaining portion of the motion will be considered

3 after the court receives the additional briefing.

4 Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Fed. R. Civ. P., the parties shall

5 have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

6 6. Failure to file objections will result in a waiver of those objections for purposes of appeal.

7 Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the

8 clerk is directed to set the matter for consideration on September 25, 2009, as noted in the

9 caption.

10 Dated this 28th day of August 2009.

J. Richard Creatura
United States Magistrate Judge

REPORT AND
RECOMMENDATION - 10